IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BRIDGET CROZIER,<br><br>          Plaintiff,<br><br>     v.<br><br>JOHNSON & JOHNSON CONSUMER<br>COMPANIES, INC.,<br><br>          Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civil Action<br>No. 12-0008 (JBS/KMW) |
| MARGUERITE MCNAMEE,<br><br>          Plaintiff,<br><br>     v.<br><br>JOHNSON & JOHNSON CONSUMER<br>COMPANIES, INC.,<br><br>          Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civil Action<br>No. 12-0010 (JBS/KMW)<br><br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

Plaintiffs Bridget Crozier and Marguerite McNamee filed these putative class actions alleging that Defendant Johnson & Johnson Consumer Companies Inc. ("J&J") has violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, et seq, by misleading consumers to believe that J&J's Neosporin NEO TO GO! first aid antiseptic/pain relieving spray contains antibiotics. Defendants filed motions to dismiss, which the Court granted in Crozier v. Johnson & Johnson Consumer Companies, Inc., CIV.A. 12-0008 JBS, --- F. Supp. 2d ---, 2012 WL 4507381 (D.N.J.

Sept. 28, 2012) ("Crozier I"). In Crozier I, the Court dismissed Plaintiffs' NJCFA claims without prejudice. This matter now comes before the Court on Plaintiffs' Motions to Amend their Complaints [Civ. No. 12-08, Docket Item 19; Civ No. 12-10, Docket Item 18][1] and Defendants' Motion for Leave to File Sur-Reply [Civ. No. 12-08, Docket Item 28; Civ No. 12-10, Docket Item 27]. For the reasons explained herein, Defendants' Motion for Leave to File a Sur-Reply will be granted and Plaintiffs' Motion to Amend will be denied. The Court finds as follows:

1.     Plaintiffs filed Motions to Amend their Complaints and attached Amended Complaints to their motions. Defendants opposed [Civ. No. 12-08, Docket Item 22; Civ No. 12-10, Docket Item 21] Plaintiffs' motions. Plaintiffs then filed Replies that included Second Amended Complaints [Civ. No. 12-08, Docket Item 26; Civ. No. 12-10, Docket Item 25][2] with new factual allegations. Defendants then filed motions for leave to file a sur-reply to respond to the allegations in the Second Amended Complaints or in the alternative to strike Plaintiffs Second

_____

[1] The filings in Civil Actions 12-08 and 12-10 are virtually identical; all the Court's citations will be to Civil Action 12-08.

[2] Plaintiffs have confusingly titled the Second Amended Complaints as the First Amended Complaints and titled their first batch of amended complaints as simply Amended Complaints. To avoid confusion, the Court will refer to these Complaints as the First and Second Amended Complaints, respectively, because they are Plaintiffs' first and second attempts at amending the original complaints.

Amended Complaints. [Civ. No. 12-08, Docket Item 28; Civ. No. 12-10, Docket Item 27.] The Court will review Plaintiffs' Second Amended Complaints, instead of their First Amended Complaints, and will grant Defendants' motion for leave to file a sur-reply.

2.   The gravamen of Plaintiffs' Complaints is that Defendant has deceived consumers, including Plaintiffs, by marketing, advertising, and distributing the NEO TO GO! spray in a manner that leads them to believe that the product contains antibiotics.[3] The spray is part of J&J's Neosporin line of products, which includes, inter alia, Neosporin antibiotic ointment, NEO TO GO! single use antibiotic packets, Neosporin LT Lip Treatment, Neosporin AF Athlete's Foot Cream, and Neosporin AF Jock Itch Cream. (2d Am. Compl. ¶¶ 18-19.) All of the antibiotic products in the Neosporin line have the same green and yellow color scheme, the Neosporin Signature Gold Mark, and the Neosporin Trade Dress. (2d Am. Compl. ¶ 18.) Other non-antibiotic products, such as the athlete's foot and jock itch remedies, are not manufactured and marketed with the Neosporin Signature Gold Mark and Trade Dress. (2d Am. Compl. ¶ 19.) The spray does not have antibiotics, but it is marketed and manufactured with the Neosporin Signature Gold Mark and Trade Dress. (2d Am. Compl. ¶

---

[3]Plaintiffs' Second Amended Complaints are largely identical to the original Complaints that the Court assessed in Crozier I; the Court will briefly summarize relevant background information and focus upon the new factual allegations.

17.)

3.   In the Second Amended Complaints, Plaintiffs describe observing, on multiple occasions in the first half of 2011, a television commercial advertising the spray using the recognizable green and yellow color scheme and Neosporin signature gold mark and trade dress. (2d Am. Compl. ¶ 20.) The commercial depicts a mom spraying an injured child who had fallen in the playground and gives "the impression that the product contained antibiotics like other Neosporin products using the green and yellow color scheme, Neosporin Signature Gold Mark, and Neosporin Trade Dress." (2d Am. Compl. ¶¶ 20-21.) Plaintiffs allege that they had this impression because

> after first showing a child falling in the playground, the commercial introduced the "new" NEO TO GO; then confusingly switched products by stating "now NEOSPORIN gives you germ killing, infection protection anywhere"; and then switched back to NEO TO GO by misleadingly keeping the letters N-E-O in place on the screen but simply transposing the letters S-P-O-R-I-N to the letters TO GO.

(2d Am. Compl. ¶ 21.) Within weeks of viewing the commercials, Plaintiffs purchased the spray because they noticed the green and yellow color scheme, the Signature Gold Mark, the Neosporin Trade Dress, and the product placement in the pharmacy aisle.[4] (2d Am.

_____

[4]Crozier purchased the spray at a Walmart store in Audubon, New Jersey to buy items in preparation for a vacation to the Jersey shore. (2d Am. Compl. ¶ 22.) McNamee purchased the spray at a Rite Aid store in Swedesboro, New Jersey, to buy items in preparation for a vacation to the Grand Cayman Islands. (Civ. No. 12-10, 2d Am. Compl. ¶ 22.)

Compl. ¶ 23.) Plaintiffs "specifically bought the spray because [they] believed it to contain antibiotics, like other Neosporin products using the green and yellow color scheme." (2d Am. Compl. ¶ 23.)

4.   Defendants opposed Plaintiffs' motions to amend, arguing that the proposed amendment is futile because the Plaintiffs did not plead that they actually bought the product as a result of false statements in advertising.[5]

5.   Under Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given, in the absence of circumstances such as undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of amendment. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss. <u>Massarsky v. General Motors Corp.</u>, 706 F.2d 111, 125 (3d Cir.), cert. denied, 464 U.S. 937 (1983).

6.   Because NJCFA claims "sound in fraud or misrepresentation," Rule 9(b) of the Federal Rules of Civil

---

[5]Defendants also argue, inter alia, that Plaintiffs' marketing claims are repackaged versions of their preempted labeling claims and that Plaintiffs failed to allege ascertainable loss. The Court has not addressed these arguments because, as explained infra, Plaintiffs' failed to plead the unlawful conduct prong of the NJCFA. That failure mandates denial of their motions to amend, regardless of any other potential flaws in their Second Amended Complaints.

Procedure applies. <u>Smajlaj v. Campbell Soup Co.</u>, 782 F. Supp. 2d
84, 91 (D.N.J. 2011); <u>see also</u> <u>F.D.I.C. v. Bathgate</u>, 27 F. 3d 850
(3d Cir. 1994) (affirming district court's application of Rule
9(b) to NJCFA claim). Rule 9(b) requires such claims to be pled
with "particularity." <u>Naporano Iron & Metal Co. v. Am. Crane
Corp.</u>, 79 F. Supp. 2d 494, 510 (D.N.J. 2000). A plaintiff may
satisfy this requirement by pleading the "date, place or time" of
the fraud, or through "alternative means of injecting precision
and some measure of substantiation into their allegations of
fraud." <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742
F.2d 786, 791 (3d Cir. 1984).

7.   To state a claim under the NJCFA, a plaintiff must
allege: (1) unlawful conduct by the defendant; (2) an
ascertainable loss; and (3) a causal relationship between the
defendant's unlawful conduct and the plaintiff's ascertainable
loss. <u>Frederico v. Home Depot</u>, 507 F.3d 188, 202 (3d Cir. 2007).
Unlawful conduct falls into three general categories: affirmative
acts, knowing omissions, and regulation violations. <u>Id</u>. In their
Reply, Plaintiffs alleged that their NJCFA claims are "based upon
affirmative advertising misrepresentations," (Pl. Reply at 9),
and the Court will focus upon affirmative misrepresentations in
its analysis.

8.   Plaintiffs have not pled affirmative advertising
misrepresentations to satisfy the Rule 9(b) pleading standards.

6

Plaintiffs alleged that "Defendant's advertising contains deceptive, confusing, and misleading statements," (Pl. Reply at 6), but Plaintiffs never identify these statements. Plaintiffs allege that J&J used the green and yellow color scheme, Neosporin Signature Gold Mark, and Neosporin Trade Dress in marketing the spray and that J&J rapidly transposed the word "Neosporin" with "Neo To Go" by switching the letters "S-P-O-R-I-N" to "To Go." Plaintiffs allege that these marketing techniques in the commercial misled them into believing that the spray contains antibiotics, but Plaintiffs have not identified any affirmative misrepresentations. Transposing letters and using the Signature Gold Mark and Trade Dress do not constitute affirmative misrepresentations that the spray contains antibiotics. Plaintiffs also argue that J&J's use of the term "infection protection" in the commercial, combined with the well-recognized Neosporin brand name, constitutes misrepresentation. (Pl. Reply at 10.) But Plaintiffs have not pled that the spray, which contains an antiseptic, does not provide infection protection or that J&J's statement about infection protection was false. Plaintiff claim that J&J deceived them into believing that the spray contained antibiotics, but Plaintiffs do not allege that J&J ever stated that the spray contains antibiotics. Plaintiffs simply have not identified any statements that qualify as affirmative misrepresentations under the NJCFA.

7

9.   Plaintiffs argue that "Defendant made a conscious decision to specifically advertise and market the subject spray with the Neosporin Signature Gold Mark and Neosporin Trade Dress, despite the fact that it contains no antibiotics." (Pl. Reply at 11.) Plaintiffs have not cited any case law holding that the mark owner's use of its own signature mark and trade dress in advertising and marketing can constitute an affirmative misrepresentation. Moreover, in the Crozier I decision, the Court held that Plaintiffs' claims regarding the spray's label were preempted by federal law. The Court noted that the Food and Drug Administration ("FDA"), in drafting regulations for labeling over-the-counter medications, "clearly contemplated the confusion that can arise when consumers become familiar with a brand name and see multiple different products with the same brand name." Crozier I at *9. The Court inferred that the FDA considered the significance of signature marks and trade dresses because those items are intertwined with product line extensions and brand name recognition. Crozier I at *9. It would be incongruous for the Court to now hold that the mere presence of a signature mark and trade dress, absent any misleading statement, can constitute an affirmative misrepresentation in the marketing and advertising context, when it cannot do so in the labeling context. Plaintiffs have not identified any affirmative misrepresentation, and the Court finds that the presence of the Neosporin Signature Gold

8

Mark and Trade Dress, absent any false statements, is insufficient to satisfy the unlawful conduct prong of the NJCFA.[6]

10.  Plaintiffs also allege that the spray's "exponential pricing and strategic product placement . . . suggest . . . that NEO TO GO . . . contains antibiotics" and that "the average consumer would associate the higher price with antibiotics somehow being present in the subject spray." (Pl. Reply at 3-4, 13). Plaintiffs have not produced any case law to show that a product's price or placement in a pharmacy aisle can constitute affirmative misrepresentations. Moreover, the New Jersey Supreme Court held that "charging five or five-hundred dollars more for an item than the price charged by a nearby competitor" does not amount to consumer fraud. Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392, 416 (1995). The Court cannot find that J&J made affirmative misrepresentations simply because

---

[6] In the Crozier I opinion, the Court noted, "neither Complaint alleges with particularity the gravamen of Plaintiffs' claims, i.e., that Plaintiffs bought the spray specifically because its advertising contained the Neosporin trade dress and signature gold mark, thus leading them to believe that the product contained antibiotics." Crozier I at *12. Plaintiffs have now pled that they noticed the trade dress and signature gold mark, but they have not pled that Defendant misled them. It is conceivable that Plaintiffs might have alleged a plausible claim if, for example, they pled that J&J advertised to "look for the trade dress and signature mark to find products with antibiotics." Plaintiffs have not identified any such misleading statements from J&J. And, as Crozier I stated, "Plaintiffs' failure to plead that they were misled is fatal. . . ." Crozier I at *12.

Plaintiffs consider the spray to be expensive.[7] Plaintiffs argue
that Smajlaj v. Campbell Soup Company, 782 F. Supp. 2d 84
(D.N.J. 2011), supports their argument that the price of a
product can connote the product's contents. The
Smajlaj plaintiffs alleged that they had been misled by the
labeling and advertising of Campbell's lower-sodium soups into
buying these soups even though the sodium content was equal or
nearly equal to that of the regular soups. In Smajlaj, the
alleged misrepresentation was Campbell's assertion that the less-
sodium soups had less sodium than comparable, regular products.
The less-sodium soups were higher priced than the regular soups,
and the Smajlaj court found that "the misrepresentation thus
caused ascertainable loss of the difference in retail price
between what they paid for (less-sodium soup) and what they got
(soup equivalent for their purposes to regular tomato soup)."
Smajlaj at 103. In the present case, Plaintiffs argue that
Smajlaj found that "it was a reasonable and plausible inference
for the plaintiffs to expect that the more expensive soups had
less sodium." (Pl. Reply at 15.) Plaintiffs misstate the

_____

[7] The Crozier I opinion noted that Plaintiffs' original
Complaints stated that the spray was designed to fit anywhere to
give infection protection anytime, anywhere and, therefore, that
"Plaintiffs' own statements discount[ed] their assertion that the
price differential can 'only' be explained by misleading
advertising . . . [because] [t]he spray's convenience and
portability can also explain the price differential." Crozier I
at *12.

Smajlaj holding; Smajlaj found that Plaintiffs had alleged a
misrepresentation, i.e., less sodium content, and that the
ascertainable loss was the price differential between the
allegedly lower-sodium soups and the regular sodium soups.
Smajlaj did not find that a price differential alone constitutes
an affirmative misrepresentation. In the present case, Plaintiffs
do not allege any affirmative misrepresentations, such as a
statement from Defendant that the spray contains antibiotics. A
price differential between similar products, in and of itself,
does not constitute an affirmative misrepresentation.

        11.   Plaintiffs cite Arcand v. Brother Int'l Corp., 673 F.
Supp. 2d 282 (D.N.J. 2009) to argue that affirmative acts, such
as active misrepresentations, can constitute unlawful conduct
under the NJCFA. There is no question that an affirmative
misrepresentation can constitute unlawful conduct under the
NJCFA; the issue here is whether Plaintiffs have alleged that
Defendant made any affirmative misrepresentations. In Arcand, the
district court found that the defendant manufacturer of inkjets
made affirmative misrepresentations by placing "empty" and "Toner
Life End" messages on their printers when the printers were not
out of ink.[8] Arcand at 298. The Arcand case involves a clear
misrepresentation, i.e., a statement that the printer toner was

_____

        [8]Even though the Arcand court found affirmative
misrepresentations, it still dismissed the NJCFA claims because
the plaintiffs had not pled ascertainable loss.

depleted when it was not. Plaintiffs have not identified any such misrepresentation here. Arcand does not support Plaintiffs' claims and, instead, further supports Defendants' opposition to Plaintiffs' motions to amend.

12.   Plaintiffs also cite Cippollone v. Liggett Group, Inc., 505 U.S. 504 (1992) to argue that Defendant has a general duty not to deceive. (Pl. Reply at 6.) Cippollone assessed whether common law claims against cigarette manufacturers are preempted the Federal Cigarette Labeling and Advertising Act of 1965 and the Public Health Cigarette Smoking Act of 1969, laws which, inter alia, specifically address mandatory warning labels on cigarettes and regulate the media in which cigarettes may be advertised. The Court has already addressed preemption in Crozier I, holding that any claims based on the spray's label are preempted but that Plaintiffs' NJCFA claims based upon the spray's marketing and advertising are not preempted. Cippollone does reference a "general duty not to make fraudulent statements," Cippollone at 529, but, as explained supra, the issue is not whether a defendant may make fraudulent statements, but whether Plaintiffs have alleged that J&J made affirmative misrepresentations in their marketing or advertising such that Plaintiffs have asserted plausible claims for relief under the NJCFA. Plaintiffs have not done so, and their case will be dismissed.

13.   Plaintiffs' motions to amend will be denied because amendment is futile. Plaintiffs made three attempts to file complaints alleging plausible claims for relief. The Court considered Plaintiffs' third attempt, <u>i.e.</u>, the Second Amended Complaint, which Plaintiffs did not have leave to file and which was filed outside the timeline ordered in <u>Crozier I</u>, but Plaintiffs still have not alleged cognizable claims for relief under the NJCFA. Plaintiffs' NJCFA claims will be dismissed with prejudice, and the cases will be closed.

14.   The accompanying order will be entered.


**January 31, 2013**                    **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                     Chief U.S. District Judge

13